Melanie MARTINEZ, Plaintiff–
Appellant, Cross–Appellee,

v.

The CITY OF OPA–LOCKA, FLORIDA,
A Municipal Corporation,
Defendant–Appellee,

Marcia L. Connor, Individually,
Defendant–Appellee, Cross–
Appellant.

No. 90–6057.

United States Court of Appeals,
Eleventh Circuit.

Sept. 10, 1992.

James H. Greason, Miami, Fla., for plaintiff-appellant.

Robert I. Buchsbaum, Harriet Lewis, Hollywood, Fla., for defendants-appellees.

Before HATCHETT, Circuit Judge, JOHNSON *, and HENDERSON, Senior Circuit Judges.

PER CURIAM:

Melanie Martinez brought this action against the City of Opa–Locka, Florida ("the City") and Marcia L. Connor in the United States District Court for the Southern District of Florida, alleging that her civil rights under the first and fourteenth amendments and 42 U.S.C. § 1983 were violated when she was fired from her position with the City in retaliation for her exercise of free speech. The jury returned a verdict against both defendants and awarded damages. The City and Connor filed motions for judgment notwithstanding the verdict ("judgment n.o.v."), or in the alternative, for new trial. The court denied Connor's motion and entered final judgment on the jury verdict for liability and damages, but granted the City's motion for judgment n.o.v. on liability. Connor appeals the denial of her motion for judgment n.o.v. Martinez cross-appeals from the entry of judgment n.o.v. in favor of the City. The issues presented are (1) whether the district court erred in denying Connor's motion for judgment n.o.v.; (2) whether Connor was entitled to the defense of qualified immunity; and (3) whether the district court erroneously granted judgment n.o.v. to the City. We affirm in part and reverse in part.

## I. FACTS AND PROCEDURAL HISTORY

The City operates under a charter that establishes a "commission-manager" form of municipal government. The charter grants the City Commission general legislative and policy-making authority. The City Manager serves as the City's chief executive officer and head of the administrative branch of the municipal government. The charter authorizes the City Manager to create administrative departments, each of which is headed by a director who reports directly to the City Manager.

In 1985, Martinez signed an employment contract with the City to become Director of the Purchasing Department. She was responsible for ensuring that all of the City's purchases conformed to the bid procedures set forth in the City's Code of Ordinances. On March 26, 1988, the Commission, sitting as a Board of Inquiry, subpoenaed Martinez to testify concerning the purchasing practices of the City. In appearances before the Board of Inquiry in April and May 1988, Martinez testified that City Manager Connor violated the prescribed bid procedures for the purchase of approximately one hundred thousand dollars worth of furniture for City Hall. Martinez gave a similar statement to an investigator from the State Attorney's office for Dade County, Florida.

Martinez' father, Brian Hooten, was a Commissioner who served on the Board of Inquiry. He was defeated in his bid for re-election to his Commission seat on November 11, 1988. On November 14, 1988, on her first day back in her office after an out-of-town trip, Connor terminated Martinez' employment with the City. Afterward, Martinez filed this three-count complaint against the City and Connor individually. She alleged in count I that her first and fourteenth amendment rights of free speech were violated when she was discharged in retaliation for her testimony before the Board of Inquiry and her statement to the State Attorney's office. She sought relief pursuant to 42 U.S.C. §§ 1983 [1] and 1988 [2] in the form of compen-

---

* See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

1. 42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects ... any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law...."

2. Under 42 U.S.C. § 1988, "[t]he jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this Title ... for the protection of all persons in the United States in their civil rights, and for their vindication,

satory damages, punitive damages against Connor, reinstatement and back-pay. In count II, she asserted a pendent state claim for breach of contract and sought compensatory damages.[3]

At trial, Connor testified that she fired Martinez solely for nonperformance of her duties. She denied that her actions were motivated by Martinez' testimony before the Board of Inquiry or her statements to the State Attorney's office. The jury, however, found that Martinez' exercise of her first amendment rights was a substantial or motivating factor in her firing, and that her dismissal infringed upon those rights. On March 12, 1990, the district court entered a final amended judgment awarding Martinez (1) $101,000.00 in compensatory damages against the City and Connor, jointly; (2) $35,000.00 in punitive damages against Connor; and (3) $5,280.27 for breach of contract against the City.[4] The City and Connor filed a joint motion for judgment n.o.v., or in the alternative, for new trial, on March 21, 1990. The district court granted the City's motion after concluding that Connor lacked final policymaking authority in personnel matters, and therefore could not subject the City to § 1983 liability for Martinez' dismissal. It denied Connor's motion after determining that there was sufficient evidence to support the jury's finding that her actions violated Martinez' civil rights. As stated, Connor appeals the district court's denial of her motion for judgment n.o.v., and Martinez cross-appeals the district court's entry of judgment n.o.v. in favor of the City.

## II. JURISDICTION

■ As a preliminary matter, Martinez challenges the jurisdiction of this court to entertain Connor's appeal. Final judgment was filed in this case on March 2, 1990. An amended final judgment was filed on March 7, 1990, and entered on the docket sheet on March 12, 1990, to correct a clerical error in the March 2, 1990 judgment. Connor's motion for judgment n.o.v. was filed on March 21, 1990. Martinez contends that Connor's motion for judgment n.o.v. was untimely because it was filed more than ten days after the filing of the amended final judgment.[5] However, the "entered-on-docket" date, in this case March 12, 1990, triggers the start of the period for filing post-judgment motions. Therefore, Connor's motion for judgment n.o.v. was timely filed within ten days of *entry* of the amended final judgment, and we have jurisdiction to entertain the appeal.

## III. CONNER'S APPEAL

In reviewing the grant or denial of a motion for judgment n.o.v., we adopt the same standard as that followed by the district court. *Miles v. Tennessee River Pulp and Paper Co.*, 862 F.2d 1525, 1528 (11th Cir.1989). All the evidence must be considered "in the light and with all reasonable inferences most favorable to the party opposed to the motion." *Id.* (quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1969). The motion should be granted only if the evidence points so overwhelmingly in favor of one party that no reasonable person could draw a contrary conclusion. Where reasonable people could differ on the basis of substantial, conflicting evidence, the motion should be denied. *Simon v. Shearson Lehman Bros., Inc.*, 895 F.2d 1304, 1310 (11th Cir.1990).

### A.

■ "Although the law is well-established that the state may not demote or

---

shall be exercised and enforced in conformity with the laws of the United States ... In any action or proceeding to enforce a provision of [section] ... 1983 ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs."

3. The district court dismissed without prejudice count III of the complaint, which alleged intentional infliction of emotional distress.

4. The parties do not dispute on appeal the award or amount of damages.

5. "Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with the party's motion for a directed verdict...." Fed.R.Civ.P. 50(b).

discharge a public employee in retaliation for speech protected under the first amendment, a public employee's right to freedom of speech is not absolute." *Bryson v. City of Waycross*, 888 F.2d 1562, 1565 (11th Cir.1989) (citation omitted). To prevail because of a dismissal in retaliation for the exercise of free speech, the plaintiff must establish that (1) the expression addressed a matter of public concern; (2) the employee's first amendment interests outweigh the interests of the employer in preserving the efficiency of government services; and (3) the employer's conduct was a substantial or motivating factor in the government's discharge decision. *Id.* Once the plaintiff makes this showing, the burden shifts to the defendant to prove by a preponderance of the evidence that it would have reached the same decision to terminate the plaintiff's employment "even in the absence of the protected conduct." *Id.* at 1566 (quoting *Mt. Healthy City School Dist. Board of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977)).

■ Because the first two elements of the plaintiff's prima facie case constitute matters of law, we review them de novo. *See Bryson*, 888 F.2d at 1566 n. 2; *Allen v. Scribner*, 812 F.2d 426, 430 n. 8 (9th Cir. 1987). Whether the plaintiff's speech addressed a matter of public concern depends upon the content, form and context of the statement considered in light of the entire record. *Rankin v. McPherson*, 483 U.S. 378, 384, 107 S.Ct. 2891, 2897, 97 L.Ed.2d 315 (1987). The content of Martinez' statements before the Board of Inquiry and to the State Attorney's office provided information concerning the expenditure of public funds in violation of City's Code of Ordinances. The form of her expression was testimony before the City's legislative body and statements to an investigator of the State Attorney's office. She made her statements in the context of an examination into the activities of City personnel by officials with authorized investigatory powers. As stated in *Allen:*

> [S]peech that concerns 'issues about which information is needed or appropriate to enable the members of society' to make informed decisions about the operation of their government merits the highest degree of first amendment protection.

*Allen*, 812 F.2d at 431 (citation omitted). Under these circumstances, we conclude that Martinez' testimony was speech that clearly affected a matter of public concern.

■ Several factors must also be considered in assessing whether the City's interest in promoting efficient government services outweighs Martinez' interest in protected freedom of speech, including "(1) whether the *speech at issue* impedes the government's ability to perform its duties efficiently, (2) the manner, time and place of the speech, and (3) the context within which the speech was made." *Bryson*, 888 F.2d at 1567 (emphasis in original) (citations omitted). Rather than impeding the government's ability to perform its duties, Martinez' testimony was in furtherance of the City's responsibility to pursue efficiency in its bid procedures. Her expression clearly was made at a proper time, place and manner, and the context in which she made her statements *required* her to furnish information respecting City purchasing practices. Balancing these factors, we conclude that Martinez' free speech rights were not outweighed by the City's interest in providing proper government service.

We next examine whether this conduct played a motivating role in firing Martinez. This issue is one of fact for the jury to decide, and judgment n.o.v. can be granted only if the jury's verdict is not supported by substantial evidence. The evidence adduced at trial disclosed that Connor knew the subject matter of the Board of Inquiry's investigation, could have learned the nature of Martinez' testimony by reading the local newspaper, complained to the City Commission that certain department heads had talked to members of the Board of Inquiry, admitted that Martinez could have been one of those department heads, and fired Martinez shortly after her father had been defeated in his bid to be re-elected to the Commission that was engaged in the investigation. This evidence was sufficient to support the jury finding that Martinez'

testimony before the Board of Inquiry was a substantial or motivating factor in Connor's decision to terminate Martinez' employment.

Finally, Connor testified that she fired Martinez only because of her poor performance evaluations. This testimony is the only evidence Connor submitted to demonstrate that she would have fired Martinez despite her statements to the Board of Inquiry or the State Attorney's office. Neither she nor the City introduced copies of Martinez' performance evaluations. Thus, whether Connor met her burden of proving that she would have fired Martinez in the absence of her exercise of free speech became a credibility determination for the jury. The district court did not err in refusing to grant judgment n.o.v. in favor of Connor.

### B.

■■■■■ Connor also raised the defense of qualified immunity in her motion for judgment n.o.v. Whether Connor is entitled to the defense is a matter of law for this court to decide de novo. *Adams v. St. Lucie County Sheriff's Dept.*, 962 F.2d 1563, 1567 (11th Cir.1992). Connor claims on appeal that she is entitled to qualified immunity from damages because she reasonably believed that her actions were lawful. A municipal official is entitled to qualified immunity for actions taken pursuant to their discretionary authority if a reasonable official could have believed that his or her actions were lawful in light of clearly established law and the information available. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Id.* at 818, 102 S.Ct. at 2738. The law concerning whether a public employee's expression is constitutionally protected conduct was clearly established at the time Connor fired Martinez. *See Kurtz v. Vickrey*, 855 F.2d 723 (11th Cir.1988). Connor admitted as much in her trial testimony. Nonetheless, the jury found as a

factual matter that Connor fired Martinez in retaliation for her testimony and statements concerning the City's purchasing practices. Consequently, Connor was not entitled to the qualified immunity defense.

### IV. MARTINEZ' CROSS–APPEAL

■■■■ Local governments are directly liable under § 1983 for monetary, declaratory or injunctive relief for constitutional deprivations resulting from (1) an unconstitutional action taken pursuant to an officially promulgated policy statement, decision, regulation or ordinance; or (2) governmental custom, even though not authorized by written law. *Monell v. Department of Social Services*, 436 U.S. 658, 690–691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Although local governments cannot be held liable merely on a theory of respondeat superior, *id.* at 691, 98 S.Ct. at 2036, a single decision by an official policymaker can establish the existence of an unconstitutional municipal policy. The Court has enunciated several guiding principles to evaluate whether a decision of a single official is sufficient to give rise to municipal liability, among them:

(1) Municipalities have section 1983 liability only for acts officially sanctioned or ordered by the municipality.

(2) Only those municipal officials who have " 'final policymaking authority' " may subject the municipality to section 1983 liability for their actions.

(3) The determination of whether or not a particular official has " 'final policymaking authority' " is governed by state law, including valid local ordinances and regulations.

(4) The challenged action must have been taken pursuant to a policy adopted by the official or officials responsible for making policy in that particular area of the city's business, as determined by state law.

*Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 997 (11th Cir.1990) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 125, 108 S.Ct. 915, 924, 925, 99 L.Ed.2d 107 (1988) (plurality opinion)). Additionally, the Court has cautioned that "a

federal court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." *Praprotnik*, 485 U.S. at 126, 108 S.Ct. at 926.

■ Applying these principles to the case at hand, Art. II § 9 of the City's charter provides that "[a]ll powers of the city and the determination of all matters of policy shall be vested in the commission." Pursuant to Art. I § 4(3)(a), "[t]he Commission shall have and exercise all powers of the City not specifically conferred upon other offices [officers] and employees." However, Art. II § 11 of the City's charter, entitled "Commission not to interfere with appointments or removals," states that:

> Neither the commission nor any of its members shall direct or request the appointment of any person to, or his removal from, office by the city manager or by any of his subordinates, *or in any manner take part in the appointment or removal of officers and employes [employees] in the administrative service of the city* ... Any commissioner violating the provisions of this section, or voting for a resolution or ordinance in violation of this section, shall be guilty of a misdemeanor and upon conviction thereof shall cease to be a commissioner. (Emphasis added).

By this provision, the City Manager's decision to hire or fire administrative personnel is completely insulated from review by the Commission. The general policymaking authority granted by the charter to the Commission is thereby vitiated with respect to the appointment or removal of employees in the administrative service.

Additionally, Art. XIII § 185 divides the civil service into two categories of employees, unclassified and classified. The unclassified service includes the City Manager and the directors of departments, among others. Although the Personnel Board is empowered to hear appeals from personnel decisions regarding classified employees, *see* Art. XIII § 183(4), there is no provision in the charter granting the Personnel Board or any other duly constituted body

the power to review personnel decisions that affect unclassified employees in the administrative service. Thus, an unclassified employee in the administrative department of the City has no recourse in the event of an adverse personnel decision by the City Manager. As an example, Art. XIII § 179 of the charter requires that "appointments and promotions in the administrative service of the City ... shall be made according to merit and fitness...." Despite this directive, an unclassified employee in the administrative service who was terminated by the City Manager on a basis other than merit or fitness would have no higher authority before which to plead. Any member of the Commission who sought to intervene on the dismissed employee's behalf could risk being convicted of a misdemeanor. Charter, Art. II § 11. This case is therefore unlike *Praprotnik*, in which the City of St. Louis' charter contained a provision similar to Art. XIII § 179. *See Praprotnik*, 485 U.S. at 129, 108 S.Ct. at 927. In *Praprotnik*, the Court held that the St. Louis Civil Service Commission had the authority to review a discretionary decision by an official made in violation of the charter's requirement that all personnel decisions were to be based on merit and fitness. It concluded that the Civil Service Commission's "mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority, especially where (as here) the wrongfulness of the subordinate's decision arises from a retaliatory motive or other unstated rationale." *Id.* at 130, 108 S.Ct. at 928. The present case does not concern a delegation of policy-making authority by a superior officer to his subordinate. Instead, the City's charter eliminates the authority of *any* official or body to review the City Manager's decision to fire an unclassified employee for retaliatory reasons.

The Court also warned in *Praprotnik* that a municipal charter could not insulate the municipality from liability for constitutional deprivations merely by including a "precatory admonition against discrimination or any other employment practice not based on merit and fitness...." *Id.* at

130, 108 S.Ct. at 928 (citations omitted). Instead, the "decisions, embodied in state and local law, that [allocate] policymaking authority among particular individuals and bodies" are determinative of who is an official policymaker. *Id.* at 131, 108 S.Ct. at 928. Except for § 179, the City's charter nowhere establishes employment policy for unclassified employees. Hence, the City Manager's discretion over unclassified personnel matters is not constrained by any policy other than that set by her. In this light, we cannot view § 179 as establishing municipal employment policy. Rather, we construe § 11 of the City's charter as vesting the City Manager with absolute, discretionary authority to hire and fire unclassified personnel in the administrative department. On this basis, we conclude that § 11 is a direct grant of power to the City Manager to make final policy with respect to personnel matters for unclassified employees, and hold that City Manager Connor's termination of Martinez for retaliatory reasons subjects the City to § 1983 liability.

## V.

Accordingly, we AFFIRM the judgment of the district court with respect to the denial of Connor's motion for judgment n.o.v.,[6] and REVERSE its judgment n.o.v. in favor of the City. Martinez requests attorney's fees for this appeal. As the prevailing party in the underlying litigation against Connor, Martinez is entitled to an award of fees incurred both in her successful defense of Connor's appeal and her successful cross-appeal. *Finch v. City of Vernon,* 877 F.2d 1497, 1508 (11th Cir. 1989); *Cabrales v. County of Los Angeles,* 864 F.2d 1454, 1466 (9th Cir.1988). Her motion for attorney's fees on appeal is therefore GRANTED, and we REMAND this issue for a determination by the district court of a reasonable fee award.

---

6. Connor does not furnish any ground or argument to support her appeal of the district court's denial of her alternative motion for new trial. Consequently, we do not address the merits of this part of her appeal.

JOHNSON, Senior Circuit Judge, concurring in part and dissenting in part:

I cannot agree with the majority's conclusion that city manager Connor exercised final policymaking authority over Opa–Locka's employment practices. Consequently, I dissent from the majority's reversal of judgment n.o.v. on the issue of municipal liability.[1]

"It is well established that a municipality may be held liable under § 1983 only when the deprivation at issue was undertaken pursuant to city 'custom' or 'policy,' and not simply on the basis of *respondeat superior,*" *Brown v. City of Fort Lauderdale,* 923 F.2d 1474, 1479 (11th Cir.1991). City policy is not limited to the official acts of a city's legislative body: "City policy also may be implicated by the acts of individual policymaking officials or by pervasive city custom." *Id.* at 1480. A person with final *decisionmaking* authority does not, however, necessarily possess authority to make final *policy. Pembaur v. City of Cincinnati,* 475 U.S. 469, 481–83 & 483 n. 12, 106 S.Ct. 1292, 1299–1300 & 1300 n. 12, 89 L.Ed.2d 452 (1986); *see City of St. Louis v. Praprotnik,* 485 U.S. 112, 126–27, 108 S.Ct. 915, 925–26, 99 L.Ed.2d 107 (1988). In order for municipal liability to attach on the basis of a single unlawful act, the official who causes the harm "must also be responsible for establishing final government policy respecting such activity." *Pembaur,* 475 U.S. at 482–83, 106 S.Ct. at 1300; *see also Bannum, Inc. v. City of Fort Lauderdale,* 901 F.2d 989, 997 (11th Cir.1990). Thus, the fact that city manager Connor had the power to hire and fire—final decisional authority—does not necessarily mean that she had the authority to set the final policies governing municipal employment.

For reasons that are at best unclear, the majority has broadly construed article II, section 11 of the Opa–Locka city charter, reading this provision as conferring on the city manager absolute policymaking au-

---

1. I concur with the majority's resolution of all other issues presented for decision.

thority over the city's personnel policies. "[I]t is a well recognized rule of statutory construction that exceptions or provisos should be narrowly and strictly construed." *Samara Dev. Corp. v. Marlow*, 556 So.2d 1097, 1100 (Fla.1990); *see Brown*, 923 F.2d at 1480. Article I, section 3 [2] and article II, section 9 of the city charter together vest the city commission with the authority to run the affairs of the city absent an express delegation of a particular task or duty elsewhere in the charter. Section 11 thus constitutes an exception to the general powers conferred on the city commission under sections 3 and 9 and therefore, under well settled principles of construction, is to be narrowly construed. *Marlow*, 556 So.2d at 1100. Under a narrow reading of article II, section 11, the provision merely confers final *decisional* authority on the city manager over individual personnel decisions. *See id.; see also Jett v. Dallas Ind. School Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989); *Praprotnik*, 485 U.S. at 125, 108 S.Ct. at 925; *Bailey v. Board of Comm'rs of Alachua County*, 956 F.2d 1112, 1121, 1125 (11th Cir.1992); *see generally Brown*, 923 F.2d at 1480. Because of the absence of contrary record evidence suggesting that a broad reading of article II, section 11 is in order, I would defer to the city's reasonable—and narrow—reading of this provision. *Marlow*, 556 So.2d at 1100; *see Jett*, 491 U.S. at 737, 109 S.Ct. at 2723; *Praprotnik*, 485 U.S. at 125, 108 S.Ct. at 925; *Bailey*, 956 F.2d at 1125. The city charter expressly gives the city commission the power to make all city policies, Opa–Locka City Charter, art. I, § 3, *id.* at art. II, § 9; consequently, unless the commission has delegated to Connor the final authority to set employment policies, Opa–Locka may not be held liable for Connor's retaliatory firing of Martinez.[3]

If final policymaking authority is delegated, then the person who assumes the power to make final policy may create municipal liability on the basis of a single unlawful act. *Jett*, 491 U.S. at 737, 109 S.Ct. at 2723; *Praprotnik*, 485 U.S. at 124 n. 1, 127, 108 S.Ct. at 924 n. 1, 926; *Pembaur*, 475 U.S. at 483, 106 S.Ct. at 1300. When analyzing whether a delegation of final policymaking authority has occurred, the Court may examine both the city charter and the customs and practices of Opa–Locka with regard to who exercised final authority over the city's employment policies. *Brown*, 923 F.2d at 1480, *Mandel v. Doe*, 888 F.2d 783, 793 (11th Cir.1989).

Cross-appellant Martinez has not provided either this Court or the court below with any evidence that would support a finding that the city commission had delegated to Connor the authority to make final policy decisions regarding the city's employment policies. Moreover, as the plaintiff, she had the burden of establishing that her retaliatory discharge reflected an official policy of the city. *See Brown*, 923 F.2d at 1481. Thus, although city manager Connor is vested with final decisional authority to take action regarding an individual's employment with the city, there is no evidence before this Court showing that Connor has been delegated—either formally or through a *de facto* arrangement—the authority to set the final policies that govern the city's employment practices.[4] It may well be

---

2. In relevant part, this provision provides that:
   Pursuant to its provisions and subject only to the limitations imposed by the state constitution and by this charter, all powers of the city shall be vested in an elective council, hereinafter referred to as "the commission," which shall enact local legislation, adopt budgets, determine policies, and appoint the city manager, who shall execute the laws and administer the government of the city.
   Opa–Locka City Charter, article I, § 3.

3. The majority attempts to distinguish *Praprotnik* from the case at bar based on the fact that Martinez could not appeal her dismissal. Majority opinion, *supra*, at 714. With all due respect, Martinez's ability to appeal a particular employment decision is, by itself, entirely irrelevant to the determination of who had the authority to set the city's final employment policies. *See Pembaur*, 475 U.S. at 483 n. 12, 106 S.Ct. at 1300 n. 12. This rationale merely confirms my conclusion that the majority has improperly equated the power to make a final decision with the power to set final policies.

4. For example, whether or not to require a high school diploma of all potential Opa–Locka city employees is ostensibly a policy decision that would be set by the city commission, even though Connor might, on a day-to-day basis, attempt to hire only those persons who possess

that the Opa–Locka city commission has delegated final policymaking authority over employment policies to the city manager. However, Martinez has failed to establish that this is the case. Having failed to meet her burden of establishing that Connor possessed final policymaking authority over city employment policies, Martinez may not recover damages from the city. *Brown,* 923 F.2d at 1480–81. Consequently, the lower court's entry of judgment n.o.v. in favor of Opa–Locka was proper.

The majority has improperly and arbitrarily conflated the power to make a final decision with the power to set the policies that govern when a particular decision is proper. Because the district court's order granting judgment n.o.v. to Opa–Locka is due to be affirmed, I dissent.

high school diplomas. Connor's day-to-day practice would not preclude the city commission from setting an alternate policy, which Connor would be bound to enforce on pain of discharge. Opa–Locka City Charter, art. II, § 10. *See Williams v. Butler,* 863 F.2d 1398, 1402–03 (8th Cir.1988) (en banc) (explaining the difference between discretionary authority to act and delegation of final policymaking authority), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3215, 106 L.Ed.2d 565 (1989), *cited with approval, Mandel,* 888 F.2d at 793.