United States Court of Appeals,

Eleventh Circuit.

No. 96-6111.

William C. MARTIN, Plaintiff-Appellee,

v.

Victor BAUGH, individually and in his official capacity, Defendant-Appellant.

April 28, 1998.

Appeal from the United States District Court for the Northern District of Alabama. (No. CV-95-AR-0387-S), William M. Acker, Jr., Judge.

Before TJOFLAT and DUBINA, Circuit Judges, and STAGG[*], Senior District Judge.

TJOFLAT, Circuit Judge:

In this case, a radio technician contends that his employer (the city of Birmingham), his supervisor, and Birmingham's mayor violated the First and Fourteenth Amendments by retaliating against him for his criticism of the manner in which the city awarded a contract. Seeking both legal and equitable relief, he has sued all three parties under 42 U.S.C. § 1983 (1994), the supervisor in both his official and individual capacities.

The interlocutory appeal before us is from the district court's order rejecting the supervisor's defense of qualified immunity and denying him summary judgment on the plaintiff's claim for money damages. The appeal thus presents only one question: whether the supervisor, in his individual capacity, is entitled to qualified immunity from suit under section 1983. We answer that question in the affirmative and therefore reverse the judgment of the district court.

I.

---

[*]Honorable Tom Stagg, Senior U.S. District Judge for the Western District of Louisiana, sitting by designation.

The salient facts are as follows. William C. Martin was hired by the City of Birmingham in 1979 as a communications technician in the City's Department of Communications. His job responsibilities included maintenance of the communications equipment used by Birmingham police and fire personnel. Defendant Victor Baugh was head of the Communications Department and Martin's supervisor at all times relevant to this litigation.

In the spring of 1993, Birmingham solicited bids for an upgrade of its existing communications system. Ericsson General Electric ("GE") submitted a bid in August of 1993 to install a system based on an "APCO 16" standard.[1] It was the only company to submit an APCO 16 bid. Motorola submitted a bid based on the "APCO 25" standard. Motorola was likewise the only company to submit a bid on its chosen standard. GE's bid was lower than Motorola's; the City, however, rejected both offers and then entered into private negotiations with Motorola for an APCO 25 system. Birmingham concluded a contract with Motorola in spring of 1994.

The GE-Motorola bidding process was surrounded by considerable controversy. Martin was particularly concerned that an APCO 25 system would be inferior to an APCO 16 system for Birmingham's needs. He therefore aired his opinions to a member of the Birmingham city council, Jimmy Blake, and the Birmingham chapter of the Fraternal Order of Police (the "FOP"). Martin disseminated technical information concerning the two systems to Councilman Blake and the FOP and questioned the bidding standards upon which Motorola had submitted its bid. Eventually, Martin gave sworn testimony concerning the systems in a suit between GE and Motorola that arose

---

[1] The APCO designation refers to the Associated Public-Safety Communications Officials, Inc., an organization that promulgates and reviews industry standards against which communications systems are tested.

out of the bidding process.[2]

Martin conducted his speech activities without notifying his supervisor, Baugh. After Baugh learned of Martin's activism, he called upon Martin to answer for his conduct. Baugh told Martin he was insubordinate for "going outside the chain of command" and strongly suggested that Martin resign. Baugh also gave Martin written reprimands for his activities and assigned some of Martin's duties to another employee. As a result of his conflict with Baugh, Martin became depressed, and, on the advice of his physician, took a leave of absence.[3] He then brought this suit against the City, Mayor Richard Arrington, and Baugh.

Martin's complaint alleges that his statements to Councilman Blake and the FOP constituted speech protected by the First and Fourteenth Amendments.[4] Consequently, he alleges that when Baugh disciplined him for making those statements, Baugh exposed himself to liability in both his official and individual capacities under 42 U.S.C. § 1983. Martin claims that the City and the Mayor are answerable for Baugh's conduct, and he seeks legal and equitable relief against all three defendants. As noted *supra,* the only claim before us is Martin's damages claim against Baugh in his individual capacity.

Baugh moved the district court to dismiss Martin's claim under Federal Rule of Civil Procedure 12(b)(6) on the ground that the allegations of the complaint demonstrated that he was entitled to qualified immunity. The court denied his motion. Baugh did not appeal the court's

---

[2]That suit is otherwise unrelated to this litigation. This court recently reversed the district court's decision in the case and remanded with instructions to dismiss for lack of jurisdiction. *See Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Elecs., Inc.,* 120 F.3d 216 (11th Cir.), *reh'g and suggestion for reh'g en banc denied,* 130 F.3d 446 (1997).

[3]The record does not indicate whether Martin is still employed by the City of Birmingham.

[4]The district court dismissed Martin's original complaint for failure to state a claim for relief. The complaint referred to in this opinion is Martin's amended complaint.

ruling; instead, he raised his qualified immunity defense anew in a motion for summary judgment. The district court again rejected Baugh's defense, stating that "[t]his court cannot now say, any more than it was able to say on 12(b)(6) consideration, that the pertinent law was not established, or that a controlling and well-understood principle inherent in the First Amendment protected Martin's right to express himself as he did."[5] Baugh now appeals to this court under 28 U.S.C. § 1291 (1994), asserting that the district court incorrectly denied his motion for summary judgment.[6]

## II.

To defeat a claim for qualified immunity, a plaintiff must show that the federal right he accuses the defendant of violating was "clearly established" when the defendant acted. *See Foy v. Holston,* 94 F.3d 1528, 1532 (11th Cir.1996). In other words, the defendant must be on notice that his actions are unlawful. *See Beauregard v. Olson,* 84 F.3d 1402, 1404 (11th Cir.1996) (stating that for a plaintiff's claim to survive a defense of qualified immunity, it must be "obvious to every reasonable person in [the defendant's] place that [the defendant's conduct] would violate federal law"). Martin accuses Baugh of infringing upon his First Amendment right to free speech. He must therefore show that it was "clearly established" at the time of Baugh's conduct that Martin had a constitutional right to speak as he did. We agree with Baugh that Martin has not carried this burden.

"[O]nly in exceptional cases will government actors have no shield against claims made

---

[5]The district court may have caused confusion with this statement. As discussed *infra,* the test for determining, in a case such as this, whether a motion for summary judgment based on qualified immunity should be granted is whether the plaintiff can show that it was clearly established at the time of the defendant's conduct that the plaintiff's speech was protected. In any event, we review the district court's decision *de novo.*

[6]Martin challenges our jurisdiction to hear this case under *Johnson v. Jones,* 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), because there are factual issues in dispute. We refer Martin to our recent decision in *Mencer v. Hammonds,* 134 F.3d 1066, 1069 (11th Cir.1998) (holding that the court has jurisdiction to review cases in which issues of "evidence sufficiency" remain), and reject this argument.

against them in their individual capacities." *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1149 (11th Cir.1994) (emphasis omitted). Martin's case is especially difficult to maintain because he bases his claim against Baugh on the First Amendment. *See Dartland v. Metropolitan Dade County,* 866 F.2d 1321, 1323 (11th Cir.1989) (stating that the First Amendment claim that survives a defense of qualified immunity is an "extraordinary" one). As a government employee, Martin's speech is not constitutionally protected unless it passes the test set out by the Supreme Court in *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and refined in *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Under *Pickering-Connick,* a plaintiff must show that 1) the speech at issue involves a matter "of public concern," and 2) the value of the speech outweighs its potential for disruption of government workplace efficiency. *See Goffer v. Marbury,* 956 F.2d 1045, 1049 (11th Cir.1992). Because both prongs involve legal determinations that are intensely fact-specific and do not lend themselves to clear, bright-line rules, it is nearly impossible for a reasonable person to predict how a court will weigh the myriad factors that inform an application of the *Pickering-Connick* test. *See id.* at 1048-50 (detailing some of the "panoply of indicia" and "numerous factors" involved in the determination). Consequently, a defendant in a First Amendment suit will only rarely be on notice that his actions are unlawful. Unless the plaintiff can either produce a case in which speech materially similar to his in all *Pickering-Connick* respects was held protected, *see Lassiter,* 28 F.3d at 1149-50 ("Qualified immunity is a doctrine that focuses on the actual, on the specific, on the details of concrete cases."), or show that, on the facts of his case, no reasonable person could believe that both prongs of the test had *not* been met, he cannot defeat a defense of qualified immunity.

Here, Martin has failed to satisfy this court that the law was "developed in such a concrete and factually defined context" that Baugh should have known Martin's speech was constitutionally

protected.  *See Beauregard,* 84 F.3d at 1404.  Martin points to no case, and we find none after our own search, that would have made it obvious to a person in Baugh's position that Martin's speech to Blake and the FOP was constitutionally protected.[7]  Nor does Martin allege facts that, taken in a light most favorable to his claims, would make it clear to every reasonable person that his speech must pass the *Pickering-Connick* test.  Thus, it was not clearly established when Baugh acted that he was violating Martin's First Amendment right.

III.

For the above reasons, we reverse the district court's judgment and direct it to grant Baugh qualified immunity from Martin's section 1983 suit.

REVERSED.

---

[7]The district court apparently considered the plaintiff's speech in *Martinez v. City of Opa-Locka,* 971 F.2d 708 (11th Cir.1992), to be sufficiently similar to Martin's speech as to clearly establish that his speech was constitutionally protected.  *Martinez,* however, is distinguishable from Martin's case.  In *Martinez,* a city employee successfully sued her supervisor because she was fired for testifying before the City Board, and to an investigator from the State Attorney's office, concerning her supervisor's violations of city bidding law.  The *Martinez* court, however, repeatedly emphasized the fact that Martinez' speech was *required;*  she was subpoenaed to speak by the same government body that then fired her for speaking.  *See id.* at 710, 712.  In this case, Martin did not have to speak to Councilman Blake or the FOP;  in fact, Baugh presented evidence that such communication, without prior notification to Baugh, was a violation of city policy.  Thus, regardless of whether Martin's speech actually deserves protection under the First Amendment, *Martinez* did not clearly establish that it was protected before Baugh disciplined Martin.