**HOLLYWOOD COMMUNITY SYNAGOGUE, INC.,**
Plaintiff,

v.

**CITY OF HOLLYWOOD, FLORIDA,
and Sal Oliveri, individually,**
Defendants.

**United States of America, Plaintiff,**

v.

**City of Hollywood, Defendant.**

**Nos. 04–61212CIV, 05–60687CIV.**

United States District Court,
S.D. Florida.

June 26, 2006.

Franklin L. Zemel, Esq., Arnstein & Lehr, Fort Lauderdale, FL, for Plaintiff Hollywood Community Synagogue.

Sean R. Keveney, Esq., United States Department of Justice, Civil Rights Division, Washington, DC, for Plaintiff United States.

Chad B. Hess, Esq., Thomas J. McCausland, Esq., Conroy Simberg Ganon Krevans & Abel, P.A., Hollywood, FL, for Defendant City of Hollywood.

William T. Boyd, Esq., Boyd Mustelier Smith & Parker, Miami, FL, for Defendant Sal Oliveri.

## *ORDER GRANTING PLAINTIFF HOLLYWOOD COMMUNITY SYNAGOGUE'S MOTION FOR PARTIAL SUMMARY JUDGMENT (D.E. 225)*

LENARD, District Judge.

**THIS CAUSE** is before the Court on Plaintiff Hollywood Community Synagogue's Motion for Partial Summary Judgment ("Motion," D.E. 190), filed on March 21, 2006. On April 20, 2006, Defendant City of Hollywood ("Defendant" or "the City") filed a Response. ("Response," D.E. 243.) On May 2, 2006, Plaintiff filed a Reply. ("Reply," D.E. 260.) On May 25, 2006, the City filed a Notice of Supplemental Authority. ("Supplement," D.E. 301.) On June 1, 2006, Plaintiff filed a Memorandum of Law in Opposition to Defendant's Supplement. ("Response to the Supplement," D.E. 319.) Having considered the Motion, the Response, the Reply, the Supplement, the Response to the Supplement, and the record, the Court finds as follows:

## I. Factual and Procedural Background

On September 15, 2004, Plaintiff Hollywood Community Synagogue (hereinafter "HCS" or "the Synagogue") filed a Complaint against Defendants City of Hollywood and Sal Oliveri (Case No. 04–61212–CIV–LENARD, D.E. 14), alleging violations of numerous federal constitutional rights and statutes, including the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc *et seq.* (hereinafter "RLUIPA"). On April 26, 2005, Plaintiff United States of America filed a Complaint against Defendant City of Hollywood (Case No. 05–60687–CIV–LENARD, D.E. 1), requesting declaratory and injunctive relief based upon Defendant's alleged violation of RLUIPA. On June 16, 2005, the Court issued an Order consolidating these cases and administratively closing the higher-numbered case (Case No. 04–61212–CIV–LENARD, D.E. 75; Case No. 05–60687–CIV–LENARD, D.E. 14), finding that they involved common questions of law and fact.

On December 2, 2005, Plaintiff HCS was granted leave to file a Second Amended Complaint. (D.E. 124.) This Second Amended Complaint (D.E. 125) contains 19 counts and is the operative complaint for purposes of Plaintiff's Motion. Unless otherwise specified, the legal claims and facts that follow are taken from the allegations contained in the Second Amended Complaint in the consolidated case.

Plaintiff HCS is a synagogue with its principal place of business at 2215–2221 N. 46th Avenue, Hollywood, Florida 33021. (D.E. 125, at ¶ 6.) Defendant City of Hollywood is a city municipality authorized by the State of Florida to regulate the use of land and structures within the City's borders, consistent with law. (*Id.* at ¶ 7.) Defendant Sal Oliveri is a City Commissioner for the City of Hollywood, representing the area of Hollywood Hills. (*Id.* at ¶ 8.)

In 1999, Yosef Elul, then-President of the Synagogue, purchased two residences, located at 2215 and 2221 N. 46th Avenue, Hollywood, in a single-family district. (*Id.* at ¶ 15.) In such single-family districts, a

place of worship[1] may operate only if granted a Special Exception. (*Id.* at ¶ 19.) After the purchase of the land by Yosef Elul, the Director of Planning for the City of Hollywood advised the Synagogue that it needed to apply for a Special Exception as a place of worship but assured Synagogue representatives that such Special Exception would be granted. (*Id.* at ¶¶ 19–20.)

In May of 2001, Alan Razla, on behalf of Mr. Elul, applied for a Special Exception as a place of worship. (*Id.* at ¶ 21.) The Board of Appeal and Adjustments (hereinafter "BAA") granted a six-month Special Exception. (*Id.*) Four months later, in September of 2001, Defendant Oliveri filed an appeal with the City Commission of the BAA's grant of the Special Exception. (*Id.* at ¶ 22.) The Commission heard the appeal and subsequently granted the Synagogue a one-year Special Exception, which included certain conditions that limited parking and capacity. (*Id.*) Plaintiff United States notes that, upon information and belief, Defendant City of Hollywood had never previously imposed a time limit on a special exception for a religious use

and had only once before imposed a time limit on a special exception for a non-religious use. (Case No. 05–60687–CIV–LENARD, D.E. 1, at ¶ 20.)

In August of 2002, Arthur Eckstein, on behalf of the Synagogue, applied to the Development Review Board (hereinafter "DRB," formerly known as the BAA) for a Special Exception. (D.E. 125, at ¶ 30.) In September of 2002, the DRB granted a six-month Temporary Special Exception subject to certain enumerated conditions and found that, subject to those conditions,[2] the use of the property as a place of worship was compatible with the existing natural environment and other properties within the vicinity. (*Id.* at ¶¶ 30, 31(A).) After the DRB hearing, Defendant Oliveri filed an appeal with the Commission. (*Id.* at ¶ 32.) In October 2002, the Commission denied Oliveri's appeal and allowed HCS the six-month Temporary Special Exception. (*Id.* at ¶ 33.)

In March of 2003, the DRB granted the Synagogue a Permanent Special Exception subject to the satisfaction of certain conditions[3] within 180 days. (*Id.* at ¶ 37.) Defendant Oliveri filed another appeal. (*Id.*

---

1. The City's Zoning and Land Development Regulations do not define place of worship, and thus the Court will look to the natural and ordinary meaning. *Konikov v. Orange County, Fl,* 410 F.3d 1317, 1325 (11th Cir. 2005). A "place" is defined as "a building or locality used for a special purpose." Webster's 3d New Int'l Unabridged Dictionary 1727 (1993). "Worship" is defined as "the reverence or veneration tendered a divine being or supernatural power." *Id.* at 2637. Thus, taken together, a "place of worship" is a building or locality used for the reverence or veneration of a divine being or supernatural power.

2. The conditions imposed by the DRB were: (1) parking of any type is prohibited in the alley located behind the Synagogue; (2) the Synagogue must enter into a lease agreement for off-site parking, (3) the Synagogue must obtain garbage dumpsters in a size and style

acceptable to City staff, (4) the Synagogue must enter into a property maintenance agreement with a property maintenance provider who will maintain the premises in accordance with the City Code, and (5) the Synagogue must work with City staff to create a buffer along the rear side of the property. (D.E. 125, at ¶ 30.)

3. The conditions imposed by the DRB require the Synagogue to: (1) build a six-foot soundproofing wall at the rear property line; (2) provide for appropriate three-sided dumpster as approved by the City's Public Works Department; (3) provide additional landscaping along the north and south property lines as determined appropriate by the City's Office of Planning; and (4) provide a site plan to the City's Planning Staff that demonstrates how the Synagogue will satisfy the first three conditions. (D.E. 125, at ¶ 37.)

at ¶ 38.) On June 5, 2003, 53 days after the Permanent Special Exception was granted, the Commission, after considerable debate, reversed the decision of the DRB. (*Id.* at ¶ 39.) Among other things, the Commission claimed that the Synagogue was "too controversial." (*Id.* at ¶ 41.) "Controversiality" is not identified by the City Code as a factor to be evaluated when considering whether to grant a Special Exception. (*Id.* at ¶ 44.) Plaintiff United States notes that, upon information and belief, Defendant City of Hollywood had never previously denied a request by a place of worship to operate in either a single-family or multiple-family residential zone. (Case No. 05–60687–CIV–LENARD, D.E. 1, at ¶ 28.)

On October 16, 2003, Defendant City of Hollywood sent HCS a letter notifying the congregation that it was to cease holding services and other related activities at its current location within one week. (Case No. 05–60687–CIV–LENARD, D.E. 1, at ¶ 30.) During a July 7, 2004, meeting, the City Commission voted to direct the City Attorney to file a lawsuit to stop further organized religious services from taking place at HCS, despite the fact that this item was not on the agenda and no notice had been provided to HCS or the public that such a vote would take place. (Case No. 05–60687–CIV–LENARD, D.E. 1, at ¶ 32.) On or about July 16, 2004, the City filed suit against the Synagogue in Broward County Circuit Court, Case No. 04–11444(21), seeking declaratory and injunctive relief against the Synagogue for operating as a place of worship without a Special Exception. (D.E. 125, at ¶ 57.)

In its Second Amended Complaint, Plaintiff HCS alleges the following 18 Counts against the City of Hollywood: I) damages for violation of the Synagogue's right to free exercise of religion; II) injunctive relief for violation of the Synagogue's right to free exercise of religion;

IV) damages for violation of RLUIPA (42 U.S.C. § 2000cc(a)(1)—substantial burden); V) injunctive relief for violation of RLUIPA (42 U.S.C. § 2000cc(a)(1)—substantial burden); VI) damages for violation of RLUIPA (42 U.S.C. § 2000cc(b)(1)—unequal terms); VII) injunctive relief for violation of RLUIPA (42 U.S.C. § 2000cc(b)(1)—unequal terms); VIII) damages for violation of RLUIPA (42 U.S.C. § 2000cc(b)(2)—discrimination); IX) injunctive relief for violation of RLUIPA (42 U.S.C. § 2000cc(b)(2)—discrimination); X) damages for violation of the Florida Religious Freedom Restoration Act of 1998 (Florida RFRA); XI) injunctive relief for violation of the Florida RFRA; XII) damages for violation of the Equal Protection Clause; XIII) injunctive relief for violation of the Equal Protection Clause; XIV) damages for violation of the Substantive Due Process Clause of the Fourteenth Amendment; XV) injunctive relief for violation of the Substantive Due Process Clause of the Fourteenth Amendment; XVI) promissory estoppel; XVII) facial equal protection challenge to Article V of the City of Hollywood Code of Ordinances; XVIII) as applied equal protection challenge to Article V of the City of Hollywood Code of Ordinances; and XIX) preliminary injunctive relief. (D.E. 125, at ¶¶ 60–151.)

Plaintiff HCS's Second Amended Complaint also asserts two claims against Defendant Sal Oliveri, individually, for damages stemming from the alleged violation of Plaintiff's First and Fourteenth Amendment Rights to Free Exercise of Religion (Count III) and from the alleged violation of Plaintiff's Fourteenth Amendment Right to Equal Protection (Count XII). (*Id.* at ¶¶ 72–80, 113–121.)

Plaintiff United States' Complaint contains substantially similar facts to Plaintiff HCS's Second Amended Complaint and requests that the Court grant injunctive

and declaratory relief against Defendant City of Hollywood for violations of RLUIPA, 42 U.S.C. § 2000cc(b)(1)-(2), based on the City's treatment of HCS on less than equal terms with non-religious assemblies and on discrimination against HCS on the basis of religion or religious denomination. (Case No. 05–60687–CIV–LENARD, D.E. 1, at page 6.)

On May 10, 2006, the Court issued an Order Granting in Part and Denying in Part Defendant City of Hollywood's Motion to Dismiss HCS' Second Amended Complaint. (D.E. 272.) Therein, the Court: 1) dismissed with prejudice those parts of Counts I and II that relate to an alleged City policy of regularly granting applications for Special Exceptions; 2) dismissed Counts IV, V, X, and XI with prejudice; 3) dismissed Count XIX without prejudice; and 4) denied Defendant's Motion with respect to all other Counts. (*Id.* at 61–62.)

## II.  Plaintiff HCS's Motion for Partial Summary Judgment

In its Motion (D.E. 190), Plaintiff HCS moves for partial summary judgment, arguing that Article V, Sections 5.3 and 5.7 of the City's Zoning and Land Development Regulations (ZLDR) are unconstitutional on their face and as applied to the Synagogue.[4] (*Id.* at 2–2.) The Synagogue asserts that this determination does not require any factual findings or review of testimony, but may be made entirely on the basis of the law. (*Id.* at 13.) First, HCS maintains that Section 5.3.G. of the City's ZLDR is facially void because it gives City officials unbridled and unfettered discretion in their review of Special Exception applications. (*Id.*) The Synagogue contends that this Section contains four subjective criteria to be applied in

reviewing an application for a Special Exception and that, even if the City Commission finds that all four criteria have been met, it still has the discretion to deny the application. (*Id.* at 5–6.)

Second, the Synagogue argues that Section 5.3.G.1. constitutes a prior restraint on activities protected by the First Amendment and is unconstitutional on its face and as applied to HCS. (*Id.* at 3, 16.) HCS maintains that, although prior restraints must contain standards that are precise, definite, and objective in order to guide government officials, the City's Special Exception zoning criteria employ terms such as "compatibility," "vicinity," "adequate provision," and "sufficient, appropriate, and adequate" that are vague, subjective, and imprecise. (*Id.* at 8.) Thus, HCS argues that the Special Exception provisions threaten the right to free exercise of religion. (*Id.* at 16.)

In its Response (D.E. 243), Defendant City of Hollywood argues that the amount of discretion afforded a zoning board in determining particular land uses is extremely high because zoning is an inherently discretionary system. (*Id.* at 2.) The City thus maintains that Plaintiff has not established grounds for summary judgment on its facial or as-applied challenges. (*Id.*) Defendant agrees that the adjudication of this Motion does not require the Court to make factual determinations or consider testimony regarding witnesses' interpretations of the ZLDR sections at issue. (*Id.* at 13.)

Defendant City of Hollywood contends that Section 5.3G.2. is not facially void for "unbridled discretion" because the DRB or Commission, after reviewing an application for a Special Exception, has only three options: it may grant the application,

---

**4.**  Though Plaintiff never specifies as to which Counts its Motion relates, the Court finds that the Motion is dispositive of Counts XVII and XVIII and also affects portions of Counts I and II.

grant the application with conditions, or deny the application. (*Id.* at 5.) Defendant further argues that the four criteria used to evaluate such applications require specific findings. (*Id.* at 8.) Moreover, Defendant maintains that Section 5.3.G. of the ZLDR should be reviewed in light of the purpose of the zoning district in question, *i.e.*, in light of the section's purpose of protecting the character of single-family neighborhoods. (*Id.* at 6.)

Defendant also argues that Plaintiff's as-applied challenge is without merit because the zoning ordinances in question do not operate as a prior restraint on Plaintiff's First Amendment rights. (*Id.* at 15.) Defendant asserts that the ZLDR neither directly regulates the content of Plaintiff's protected activity nor operates as a licensing scheme and, thus, the zoning scheme should be reviewed under the more permissive standard of time, place, and manner restrictions for content-neutral regulations. (*Id.* at 15–16, 18.) Defendant then maintains that, because the ordinances are narrowly tailored to the City's substantial interest in preserving the quality of urban life and because the ordinances leave Plaintiff significant alternative avenues of expression, Plaintiff's Motion should be denied. (*Id.* at 19–20.)

In its Reply (D.E. 260), Plaintiff reiterates that the zoning scheme provides Defendant City of Hollywood unbridled discretion to grant or deny a Special Exception permit, even if all four criteria are met, and that it makes no difference that the City must make some kind of decision on every application. (*Id.* at 2–3.) Plaintiff further maintains that the Special Exception procedure constitutes a prior restraint on the exercise of First Amendment activity because applicants must obtain a permit before operating in certain parts of the City. (*Id.* at 4.) Thus, there exists a heavy presumption against the constitutional validity of the proce-dure, one that may only be overcome by narrow, objective, and definite standards, standards that are absent here. (*Id.*) Moreover, argues Plaintiff, this infirmity is not cured by the fact that Defendant provides alternate for a for the exercise of First Amendment activity. (*Id.* at 7.) Instead, Plaintiff argues that the prior restraint analysis is triggered by the existence of official discretion to deny use of a given forum for First Amendment protected activity. (*Id.* at 8.) Finally, Plaintiff asserts that, even if the Court was to construe Section 5.3.G. of the ZLDR as a content-neutral time, place and manner restriction, the Section is still unconstitutional because it does not contain precise and objective standards to guide the City's decisionmaking. (*Id.* at 10.)

In its Supplement (D.E. 301), Defendant argues that, in the event that the Court determines that the standards governing the Special Exception procedure are invalid, a conditional use "becomes a prohibited one since the obvious reason for making it a special exception use is to prohibit it in the absence of the specified approval." (*Id.* at 2–3.) Since the terms would then be considered too indefinite, the City argues that Board would be unable to grant a Special Exception to the Synagogue and thus, even if the Plaintiff's motion for partial summary judgment is granted, the Court cannot order that HCS be granted a Special Exception. (*See id.* at 2–3.)

In the Response to the Supplement (D.E. 319), the Synagogue argues that Defendant's position is lacking in legal support and represents a "disturbing tactic" on the part of the City. (*Id.* at 2.) First, Plaintiff argues that the authorities relied upon by the City are factually distinguishable because they do not concern the First Amendment. (*Id.*) Next, Plaintiff argues that, if the Special Exception provisions are declared unconstitutional, the proper

remedy is to allow the Synagogue to remain in its present location. (*See id.* at 3, 7–8.) In support of this argument, Plaintiff states that other provisions of the Code consider special exception uses, including places of worship, as generally suitable in single-family neighborhoods. (*Id.* at 7.)

### III. The Hearing

On May 23, 2006, the Court held a hearing ("the Hearing," *see* D.E. 298), at which the Parties were provided an opportunity to present their arguments. During the Hearing, Plaintiff HCS emphasized its position that the zoning ordinances in question constituted a prior restraint on protected First Amendment activity and, as such, the ordinances are required to contain clear and precise standards. (*Id.* at 3:1–12.) Plaintiff further argued the standards currently in place allow the Commission to use their unfettered discretion and to base their decisions on any criteria they choose, including "controversiality," as was cited as a basis for rejecting the Synagogue's application. (*Id.* at 4:2–6.) Plaintiff noted that, even though the City code states that a place of worship is, "generally suitable in this district," the Synagogue was denied a Special Exception because it was purportedly not compatible with its surroundings. (*Id.* at 5:21–6:6.) Thus, HCS maintained that, because it is impossible to know what criteria need to be met to obtain a Special Exception, the provisions are unconstitutionally vague. (*Id.* at 5:11–19; 12:6–17.)

Defendant City of Hollywood responded that no prior restraint can be found here. (*Id.* at 14:7.) Defendant defined a prior restraint as a governmental attempt to control the content of expression and further asserted that the City's zoning ordinances are not prior restraints because they do not require every place of worship in all zoning districts to get permission before operating. (*Id.* at 15:3–8, 16:18–17:2.) Because a place of worship need

apply for a permit only if it wants to operate in residential neighborhoods, the City contended that there was no licensing scheme or prior restraint. (*Id.* at 17:9–16.) Instead, Defendant argued that its zoning regulations were narrowly tailored to the substantial government interest of zoning and preserving the quality of urban life. (*Id.* at 20:8–18.) Thus, the City asserted that its regulations were governed by the permissive time, place, and manner restriction standards, and that this only mandated that decisions not be left up to the whim of the decisionmaker. (*Id.* at 23:8–24:3.) The City argued that, while its standards allow some elasticity, they do not leave the decision to the whim of the decisionmaker. (*Id.* at 24:20–23.)

Plaintiff responded that the City established a system in which places of worship were deemed generally acceptable subject to a Special Exception, but provided unlimited discretion to officials to decide whether to grant such an Exception. (*Id.* at 32:15–33:8.)

Upon questioning by the Court, the City stipulated that the substantial government interest justifying the zoning ordinances in question is twofold: the City's interest in zoning, generally, and the purpose of protecting the character of single-family neighborhoods, as stated in ZLDR § 4.1A. (*Id.* at 39:23–40:2.) The City argued that the provisions were narrowly tailored because they applied only to places of worship wanting to operate in residential districts. (*Id.* at 42:14–25.) Defendant further maintained that the zoning ordinances do not constitute a prior restraint because there are places in the City of Hollywood where the Synagogue can practice their First Amendment protected activities without having to ask the City for permission or a Special Exception. (*Id.* at 41:2–22.) Finally, Defendant City conceded that, if the Court

found the zoning ordinances at issue to constitute a prior restraint, the holding of *Lady J. Lingerie, Inc. v. City of Jacksonville,* 176 F.3d 1358 (11th Cir.1999), would control in this case. (*Id.* at 58:14–59:3.)

## IV. Analysis

### A. Standard of Review

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548; *see also* FED.R.CIV.P. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." *Id.* at 587, 106 S.Ct. 1348. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Id.*

Plaintiff HCS and Defendant City of Hollywood agree that the Court need not make any factual findings or examine any testimony in considering the instant motion and that the Court may issue its ruling after reviewing the text of the challenged portions of the zoning regulations in light of the applicable legal standards. After reviewing the record, the Court agrees that no genuine issue exists for trial and that partial summary judgment

may be granted as a matter of law. Accordingly, the Court will now turn to the text of the City's ZLDR in question.

## B. The City's Zoning and Land Development Regulations (ZLDR)

Hollywood Community Synagogue is located in a "Single Family District" in the City of Hollywood. Section 4.1 of the ZLDR specifies that the purpose of Single Family Districts is "to protect the character of the single family neighborhoods." (D.E. 191, Ex. B at 4.1.) The "Main Permitted Uses" in such districts are "[s]ingle family detached dwelling[s]." (*Id.*) The "Special Exceptions" in such districts are "[e]ducational facilities[,][p]laces of worship, meeting halls and similar nonprofit uses and ham radio antennas." (*Id.*)

Section 5.3.G. of the ZLDR, entitled "Special exceptions," is the primary provision at issue and contains the following language:

> Certain uses are listed as special exceptions in the Zoning and Land Development Regulations and are permitted in zoning districts subject to the approval of the Development Review Board. These uses are considered generally suitable for the districts in which listed. However, the character and nature of the uses may necessitate controls and safeguards on the manner of establishment and operation which would best serve the interests of the community and the owners of the property in question.

(D.E. 191, Ex. A at 5.3.G.) Section 5.3.G.1., entitled "Review of petitions for special exceptions," provides that all petitions for Special Exceptions shall be reviewed by the DRB, which may grant the petition if it makes all of the following findings:

a. That the use is compatible with the existing natural environment and other properties within the vicinity;

b. That there will be adequate provision for safe traffic movement, both vehicular and pedestrian, both internal to the use and in the area which will serve the use;

c. That there are adequate setbacks, buffering, and general amenities in order to control any adverse effects of noise, light, dust and other potential nuisances; and

d. That the land area is sufficient, appropriate and adequate for the use as proposed.

(*Id.* at A at 5.3.G.1(a)-(d).) The ensuing section, entitled "Decision of the Board," provides:

> In considering a petition for a special exception, the Board may grant the special exception, grant the special exception with appropriate conditions when the Board determines such conditions... are necessary to further the purpose of the zoning district or compatibility with other property within the vicinity, or deny the special exception.

(*Id.* at A at 5.3.G.2.) Finally, pursuant to Section 5.7.A., the City Commission may request a hearing on any application which, upon its determination, requires additional review to ensure that, *inter alia,* development standards and criteria have been met. (D.E. 125, at ¶ 138.[5]) Section 5.7.B. provides the Commission shall apply the same standards and criteria employed by the DRB and shall approve, approve with conditions, or deny the application. (D.E. 125, at ¶ 138; Hearing Transcript at 24:20-23, 28:1-12.)

---

**5.** Plaintiff provided the text of Section 5.7 of the ZLDR in the Second Amended Complaint (D.E. 125, at § 138); Defendant City of Holly- wood, in its Answer, admitted to the contents of this paragraph of the pleading (D.E. 307, at ¶ 138).

## C. Plaintiff's Facial and As–Applied Challenges

■ Plaintiff first raises a facial challenge to the City's zoning scheme. Generally, content-neutral zoning regulations are reviewed under the deferential "time, place, and manner" standards that were delineated by the Supreme Court in *City of Renton v. Playtime, Theatres, Inc.,* 475 U.S. 41, 50–54, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). Under these standards, "a zoning ordinance is valid if it is narrowly tailored to serve a substantial government interest and [if] it allows for reasonable alternative avenues of expression." *Lady J. Lingerie, Inc. v. City of Jacksonville,* 176 F.3d 1358 (citing *Int'l Eateries of America, Inc. v. Broward County, Fla.,* 941 F.2d 1157, 1161–65 (11th Cir.1991) and *City of Renton,* 475 U.S. at 50–52, 106 S.Ct. 925.) A city's interest "in attempting to preserve the quality of urban life" is a substantial government interest that "must be accorded high respect." *City of Renton,* 475 U.S. at 50, 106 S.Ct. 925.

■ A zoning ordinance that touches upon activities protected by the First Amendment must also contain "narrow, objective, and definite standards" to guide city officials in their review. *See Camp Legal Defense Fund, Inc. v. City of Atlanta,* 451 F.3d 1257, 1279 (11th Cir.2006) (citing *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 151, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969)). Absent such standards, the ordinance grants "unbridled discretion" to city officials and fails to " 'prevent[ ] the official from encouraging some views and discouraging others through the arbitrary' grant of an exemption." [6] *Camp,* at 1279 (*quoting Forsyth County v. Nationalist Movement,* 505 U.S. 123, 133, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992)); *see also Thornhill v. State of Alabama,*

310 U.S. 88, 97–98, 60 S.Ct. 736, 84 L.Ed. 1093 (1940) (stating that the lack of objective criteria "readily lends itself to harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure"). "A government regulation that allows arbitrary application is inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view." *Id.* (internal citations omitted).

Out of these concerns regarding the dangers of censorship, the Supreme Court has developed a long line of jurisprudence aimed at fostering the legitimate goals of lawmaking while curbing the threats of arbitrary enforcement. Yet, in reaching the proper balance, the Supreme Court has consistently emphasized that an ordinance that "makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms." *Shuttlesworth,* 394 U.S. at 151, 89 S.Ct. 935.

A "prior restraint" is a restriction on expression that is imposed before the expression occurs. *United States v. Frandsen,* 212 F.3d 1231, 1236–37 (11th Cir. 2000); *see also Ward v. Rock Against Racism,* 491 U.S. 781, 795 n. 5, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989); *Camp,* at 1283 ("[t]he term 'prior restraint' is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications occur (citing *Alexander v. United States,* 509 U.S. 544, 553, 113

---

6. The Court notes that a facial challenge to a zoning ordinance may be raised when the mere threat of abuse of power exists; no proof of actual abuse of power is required. *Thornhill v. State of Alabama,* 310 U.S. 88, 97, 60 S.Ct. 736, 84 L.Ed. 1093 (1940).

S.Ct. 2766, 125 L.Ed.2d 441 (1993) (internal quotations omitted)))." "Classic prior restraints have involved judge-issued injunctions against the publication of certain information." *Cooper v. Dillon,* 403 F.3d 1208, 1215 (11th Cir.2005). "Prior restraints have also been found where the government has unbridled discretion to limit access to a particular public forum." *Id.*

■ Defendant City of Hollywood first argues that, because places of worship can operate in other districts in the City without applying for a special exception, no prior restraint exists here. The Court finds that this assertion is in direct conflict with established Supreme Court precedent. In *Schneider v. State of New Jersey,* 308 U.S. 147, 163, 60 S.Ct. 146, 84 L.Ed. 155 (1939), the Supreme Court rejected the argument that anti-canvassing ordinances, which restricted canvassing only in streets and alleys, were valid because they did not prohibit the distribution of printed matter in other public places. The *Schneider* Court found that streets were the natural and proper places for dissemination of information and that "one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." *Id.* at 163, 60 S.Ct. 146. Further, in *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 555, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975), the Supreme Court found that a decision to deny the petitioner's request to use a municipal facility for a theater production constituted a prior restraint, even though the denial did not prevent petitioner from using another theater in the city. Accordingly, the existence of alternative fora for expression does not justify an otherwise impermissible prior restraint. *Id.* at 555, 95 S.Ct. 1239.

■ Next, Defendant contends that Section 5.3.G. of the ZLDR sufficiently restricts the discretion of City regulators and is therefore a valid time, place, and manner restriction. After careful consideration of this ordinance, the Court cannot agree. Instead, the Court finds that Section 5.3.G.1. constitutes an unconstitutional[7] prior restraint because it lacks "narrow, objective, and definite standards" to guide city officials in their review of applications for a Special Exception and thus provides City officials unbridled discretion in their consideration of the application. *See Lady J. Lingerie, Inc. v. City of Jacksonville,* 176 F.3d 1358, 1362 (11th Cir. 1999) (noting that "some measure of discretion is acceptable, but ... virtually any amount of discretion beyond the merely ministerial is suspect").

In *Lady J. Lingerie,* the Eleventh Circuit Court of Appeals considered and invalidated a similar licensing scheme. 176 F.3d at 1362. There, the City of Jacksonville created a zoning scheme that allowed adult entertainment establishments to operate as of right in only one zone; such establishments were allowed to operate in a second zone only if the zoning board granted a zoning exception after consideration of nine enumerated criteria.[8] *Id.* at

---

7. Though prior restraints are not *per se* unconstitutional, there exists a strong presumption against their constitutionality. *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 225, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). Any scheme that places unbridled discretion in the hands of a government official or agency, however, must be invalidated due to the great danger of censorship and of abridgment of

our precious First Amendment freedoms. *Id.; Southeastern Promotions,* 95 S.Ct. at 1244.

8. The relevant provision of the City of Jacksonville regulations provided that the zoning board

shall issue an order to grant the exception on if it finds from a preponderance of the evidence...that the proposed use meets, to

1361. The Eleventh Circuit characterized these criteria as "run-of-the-mill zoning considerations" that concerned compatibility with contiguous uses, environmental impact, and effect of pedestrian traffic. *Id.* at 1362. After examining these factors, the Eleventh Circuit held that none was precise or objective and that "all of them—individually and collectively—empower the zoning board to covertly discriminate against adult entertainment establishments under the guise of general 'compatibility' or 'environmental' considerations." *Id.* Specifically, in place of objective requirements, *e.g.*, there must be X number of doors per square foot, the provisions used broad, subjective language, such as buildings must "be sufficiently accessible to permit entry by" rescue services. *Id.* Because these criteria were being applied to establishments that are entitled to First Amendment protections, the Eleventh Circuit held that the licensing scheme was unconstitutional.

The criteria contained in Section 5.3.G.1. are as, if not more, broad and imprecise as those found in *Lady J. Lingerie*. The

Section directs the DRB to determine whether the use is "compatible with" the natural environment and other properties; whether there will be "adequate provision" for safe traffic movement or "adequate setbacks, buffering, and general amenities...to control...potential nuisances"; and whether the land area is "sufficient, appropriate, and adequate for the use." (D.E. 191, Ex. A at 5.3.G.1.) As in *Lady J. Lingerie*, the Court finds that none of these criteria is "precise and objective" and that all of them empower the DRB, or the Commission on appeal, to covertly discriminate against places of worship under the guise of "compatibility" or other intangible considerations. *Lady J. Lingerie*, 176 F.3d at 1362. Moreover, the Special Exception procedure employed here is even more constitutionally invidious, as it provides City officials the discretion to deny a Special Exception even if all four enumerated criteria are met. (D.E. 191, Ex. A at 5.3.G.) Nothing in the ordinance or its application prevents City officials from encouraging some places of worship while discouraging others through the arbitrary grant or denial of a Special Excep-

> the extent applicable, the following standards and criteria:
> (i) Will be consistent with the Comprehensive Plan, including any subsequent plan adopted by the Council pursuant thereto;
> (ii) Will be compatible with the existing contiguous uses or zoning and compatible with the general character of the area, considering population density, design, scale and orientation of structures to the area, property values, and existing similar uses or zoning;
> (iii) Will not have an environmental impact inconsistent with the health, safety and welfare of the community;
> (iv) Will not have a detrimental effect on vehicular or pedestrian traffic, or parking conditions, and will not result in the generation or creation of traffic inconsistent with the health, safety and welfare of the community;
> (v) Will not have a detrimental effect on the future development of contiguous proper-

> ties or the general area, according to the Comprehensive Plan, including any subsequent amendment to the plan adopted by the Council;
> (vi) Will not result in the creation of objectionable or excessive noise, lights, vibrations, fumes, odors, dust or physical activities, taking into account existing uses or zoning in the vicinity;
> (vii) Will not overburden existing public services and facilities;
> (viii) Will be sufficiently accessible to permit entry onto the property by fire, police, rescue and other services; and
> (ix) Will be consistent with the definition of a zoning exception, and will meet the standards and criteria of the zoning classification in which such use is proposed to be located, and all other requirements for such particular use set forth elsewhere in the Zoning Code, or otherwise adopted by the Planning Commission.
> *Lady J. Lingerie*, 176 F.3d at 1369–70.

tion. *See Forsyth County v. Nationalist Movement*, 505 U.S. 123, 133, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992). Because Plaintiff HCS, as a place of worship, is entitled to the protections of the Free Exercise clause of the First Amendment, the provision of such unbridled discretion to City officials is constitutionally impermissible.[9]

Accordingly, for the reasons stated above, the Court finds that the zoning scheme established in Section 5.3.G., as it relates to places of worship, is void on its face, and summary judgment is therefore **GRANTED** in favor of Plaintiff HCS on Count XVII of the Second Amended Complaint.

Last, because the Court has found the City's zoning scheme unconstitutional, it does not reach Plaintiff's argument that the provisions are also unconstitutional as applied to HCS. *See Cafe Erotica of Florida, Inc. v. St. Johns County*, 360 F.3d 1274, 1293 (11th Cir.2004); *Weaver v. Bonner*, 309 F.3d 1312, 1318 n. 9 (11th Cir. 2002) (finding that an as-applied challenge is rendered moot if the underlying statute is deemed unconstitutional). Therefore, Plaintiff's as-applied equal protection claim, contained in Count XVIII of the Second Amended Complaint, is **DENIED as moot.**

**D.  Impact on Counts I and II**

■  In Counts I and II of the Second Amended Complaint, Plaintiff HCS seeks damages and injunctive relief, respectively, as a result of the City's violation of HCS's First and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. In these counts, the Synagogue alleges, *inter alia*, that the City's denial of the Special Exception violated the Synagogue's constitutional rights to free exercise of religion and freedom of assembly for purposes of worship and teaching. (D.E. 125, at 19.)

In order to obtain relief under Section 1983, Plaintiff must demonstrate that conduct under color of state law, complained of in the civil rights suit, violated its rights, privileges, or immunities under the Constitution or laws of the United States. *Whitehorn v. Harrelson*, 758 F.2d 1416, 1419 (11th Cir.1985). Moreover, the Supreme Court has placed strict limitations on municipal liability under Section 1983. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir.1998), *citing Monell v. Department of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). There is no respondeat superior liability upon which to inculpate a municipality for the wrongful actions of its employees or agents. *Monell*, 436 U.S. at 691, 694, 98 S.Ct. 2018. Thus, a municipality can only be held liable if an official policy or custom

---

9.  The Court notes that, even if it found that the City of Hollywood's zoning scheme constituted a content-neutral time, place and manner restriction instead of a prior restraint, the City's Special Exception standards as applied to places of worship do not pass constitutional muster. The Supreme Court has held that even time, place, and manner restrictions must contain adequate standards to guide officials' discretion and allow for effective judicial review in the First Amendment context. *Thomas v. Chicago Park District*, 534 U.S. 316, 323, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002). Therefore, such regulations must contain "narrowly drawn, reasonable and definite standards." *Burk v. Augusta-Rich-*

*mond County*, 365 F.3d 1247, 1256 (11th Cir. 2004), *quoting Thomas*, 534 U.S. at 324, 122 S.Ct. 775. As discussed above, the standards provided for the DRB to review Special Exception applications contain vague and imprecise language allowing for wide variances in interpretation and application. This infirmity is only exacerbated by the fact that both the DRB and Commission retain the discretion to deny a Special Exception application, even if a place of worship is found to satisfy all four criteria. Therefore, the Court finds that the City's zoning regulations relating to places of worship are unconstitutional, even if construed as content-neutral time, place, and manner restrictions.

of that municipality causes a constitutional violation. *Id.* at 694–95, 98 S.Ct. 2018. Moreover, it is not enough for the plaintiff to merely identify conduct properly attributable to the municipality; the plaintiff must also demonstrate that, through deliberate conduct, the municipality is the moving force behind the alleged injury. *Board of County Com'rs v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

The Supreme Court in *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), held that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. *Id.* at 480, 106 S.Ct. 1292. However, any such single act must still be made pursuant to an existing, unconstitutional official municipal policy to properly attribute such conduct to the municipality pursuant to *Monell. Id.* at 478 n. 6, 479–81, 106 S.Ct. 1292; *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823–824, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). The Eleventh Circuit has summarized the Supreme Court's guiding principles, to be employed when evaluating the single action of an official policymaker is sufficient to give rise to municipal liability, as follows: (1) whether the action is officially sanctioned or ordered by the municipality; (2) whether the action is taken by officers with final policymaking authority; (3) whether this final policymaking authority is granted by state law, including valid local ordinances and regulations; (4) whether the challenged action was taken pursuant to a policy adopted by the officials responsible for making policy in that particular area of the city's business, as determined by state law. *Martinez v. City of Opa–Locka,* 971 F.2d 708, 713 (11th Cir.1992) (citations and quotation marks omitted). In its Order of May 10, 2006, the Court ruled that Plaintiff had demonstrated all four factors from *Martinez,* and had thus stated a claim for relief under 42 U.S.C. § 1983 based upon the single act by the Commission of reversing the DRB pursuant to the City's zoning ordinances. (D.E. 272, at 31–32.)

The Court has determined herein that the City's zoning ordinance relating to Special Exceptions for places of worship is unconstitutionally vague on its face in violation of Plaintiff HCS's First Amendment right to free exercise of religion. It is undisputed that the City applied this zoning ordinance to the Synagogue in denying its application for a Special Exception. The Court has, moreover, already determined that this single act of denying HCS's application constituted a municipal policy or practice sufficient to invoke municipal liability. The Court further finds that this denial pursuant to an unconstitutional ordinance was the moving force behind the violation of Plaintiff's constitutional rights. Finding no genuine issues of material fact as to this claim, the Court concludes that Plaintiff HCS is entitled to summary judgment as to the portions of Counts I and II in which Plaintiff claims that the City violated its constitutional rights through the single act of the Commission's denial of a Special Exception.

### E. Remedy

In Counts I, II, XVII, and XVIII, the Synagogue requests, *inter alia,* that the Court enter judgment against the City, direct that it be granted a Special Exception, award damages to the Synagogue, and declare the portions of Article V of the City of Hollywood Code of Ordinances relating to Special Exceptions unconstitutionally vague. (D.E. 125 at ¶¶ 69, 71, 141.)

The City, in its Supplement, argues that it may still prevent the Synagogue from operating as a place of worship in its present location even if the Special Exception procedures are deemed unconstitutional.

Essentially, the City maintains that if the Special Exception provisions are excised from the ZLDR, no special exceptions could be granted in single-family districts and the only the permitted principals uses would be allowed.

The primary issue now before the Court is whether the City's Special Exception provision may be severed from the rest of the ZLDR and what impact such severance would have on places of worship. The City is correct that severability of local ordinances is a question of state law. *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 772, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988); *Mayflower Farms, INC. v. Ten Eyck*, 297 U.S. 266, 274, 56 S.Ct. 457, 80 L.Ed. 675 (1936). However, the Florida District Court of Appeals cases provided by the City provide no support for its conclusion that, in the First Amendment context, the invalidation of the Special Exception provisions transform all conditional uses into prohibited uses.

The Eleventh Circuit has held that Florida law clearly favors the severance of invalid portions of a law from the valid ones, where possible. *Coral Springs Street Systems, Inc. v. City of Sunrise*, 371 F.3d 1320, 1347 (11th Cir.2004). The doctrine of severability is derived from the doctrine of separation of powers and is designed to show great deference to the legislative prerogative to enact laws. *Id.* However, severability is not possible where an illegal provision has tainted the remainder of the statute. *Id.* The severability determination is made by examining the invalidated section's "relation to the overall legislative intent of the statute of which it is a part, and whether the statute, less the invalid provisions, can still accomplish this intent." *Id.* (citations omitted).

■ The Florida Supreme Court, in *Smith v. Department of Insurance*, 507 So.2d 1080, 1089 (Fla.1987), has suggested the following test for discerning severability:

> When a part of a statute is declared unconstitutional the remainder of the act will be permitted to stand provided: (1) the unconstitutional provisions can be separated from the remaining valid provisions, (2) the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void, (3) the good and the bad features are not so inseparable in substance that it can be said that the Legislature would have passed the one without the other, and (4) an act complete in itself remains after the invalid provisions are stricken.

*Coral Springs*, 371 F.3d at 1348 (citations omitted). Thus, the Eleventh Circuit concluded that, under Florida law, an unconstitutional portion of a challenged statute "should be excised, leaving the rest intact and in force, when doing so does not defeat the purpose of the statute and leaves in place a law that is complete." *Id.*

■ While, in this case, factors (1) and (4) of the *Smith* test have been met, as the challenged portions of the ZLDR could be separated from the remaining provisions and leave an act complete in itself, the City's proposed remedy fails to satisfy the other two factors. Instead, the Court finds that such severance would thwart the legislative purpose of the ZLDR such that it could not be said that the Commission would have passed the one without the other. The ZLDR expressly states that places of worship are considered "generally suitable" uses within single family districts subject to controls to best serve the interests of the community and the owners of the property in question. (D.E. 191, at Ex. A at 5.3.G.; *id.* at Ex. B at 4.1.) Thus, the City never intended the complete exclusion of places of worship in single family districts and would have been unlikely to

enact an ordinance devoid of exception procedures. Removal of the Special Exception provision, therefore, cannot be accomplished without defeating the purpose of the statute and destroying the intent of the enacting body.

■ Accordingly, pursuant to the Court's authority to fashion a remedy for the City's violation of Plaintiff HCS's right to free exercise of religion and because the Court finds that Plaintiff HCS has been irreparably injured by the violation of its rights, the Court orders that the Synagogue shall be granted the Permanent Special Exception it was awarded by the DRB in March 2003, subject only to those conditions that are objective and definite.[10] Specifically, the Permanent Special Exception shall be conditioned upon the Synagogue building a six-foot soundproofing wall at the rear property line and providing a three-sided dumpster as approved by the City's Public Works department, provided that a list of approved dumpsters exists.[11]

Further, the Court orders that the City shall promptly enact new Special Exception ordinance(s) for places of worship, one(s) that contain "narrow, objective, and definite standards" guiding City officials in their review and that are otherwise constitutionally sound.

Last, the Court orders that the issue of damages that arise from Count I and that relate to the constitutional violation found here is properly placed before a jury for further determination.

## V. Conclusion

As stated above, the Court recognizes that the City of Hollywood has a substantial interest in preserving the quality of urban life in its neighborhoods. Moreover, the Court accords great respect for the City's interest in protecting the character and nature of neighborhoods in which single-family, detached dwellings predominate and in furthering the ability of its residents to engage in the quiet and peaceful enjoyment of their property.

However, the City of Hollywood, through its officials, is also charged with the protection of the religious freedoms that are found in the First Amendment and that form the cornerstone of American democracy. Zoning regulations that affect those freedoms must therefore be precise and objective in both their terms and their application. Our Constitution and our love of liberty demand no less.

Accordingly, it is:

**ORDERED AND ADJUDGED** that Plaintiff Hollywood Community Synagogue's Motion for Partial Summary Judgment (D.E. 190), filed March 21, 2006, is **GRANTED in part and DENIED as moot in part** as described herein.

10. The Court notes that, at a hearing held on June 26, 2006, the Parties announced that, as a part of the proposed settlement, the City would allow the Synagogue, *inter alia*, to operate as a "matter of right" in its present location. The Court's ruling, contained in this Order, shall not preclude the Parties from agreeing to terms that are more favorable to the Synagogue, provided that such terms are consistent with all applicable laws.

11. The Court finds that the remaining conditions—requiring "additional" landscaping "as determined appropriate" and providing a site plan—are insufficiently objective to be imposed.